IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD LIVINGSTON,<br><br>                 Petitioner,<br><br>vs.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York State Department of Corrections and Community Supervision,[1]<br><br>                 Respondent. | No. 9:18-cv-00803-JKS<br><br>MEMORANDUM DECISION |

Richard Livingston, a former New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, Livingston was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Great Meadow Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 14-B-3634), indicates that Livingston was conditionally released to parole supervision on September 15, 2019, and he submitted a change of address showing a private address effective as of that date, Docket No. 39. Respondent has answered the Petition, and Livingston has replied.

---

[1] Because Livingston has been released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted as Respondent. FED. R. CIV. P. 25(c).

I. BACKGROUND/PRIOR PROCEEDINGS

On January 24, 2013, Livingston was charged with third-degree criminal possession of a controlled substance following a traffic stop. Livingston, represented by counsel, subsequently pleaded guilty to the charge and was accepted into the Syracuse Community Treatment Court ("SCTC").[2] Livingston was informed that his successful completion of the SCTC program would result in a misdemeanor conviction and a sentence of conditional discharge. Prior to accepting his plea, the county court explained that, if Livingston failed to complete the program, he could be sentenced to a maximum of twelve years in prison. Livingston confirmed his understanding of the potential sentence upon non-completion, and indicated his desire to elect the SCTC option.

During the SCTC program, Livingston tested positive for cocaine and marijuana six times, and was sanctioned three times. On May 1, 2014, Livingston received a warning for missing treatments. A little over a month later, he was arrested and received a last chance warning (the "June 3, 2014, arrest"). On July 17, 2014, Livingston failed to appear in court, prompting the SCTC to issue a bench warrant. He was terminated from the SCTC program on October 23, 2014, after a search warrant executed the day prior revealed Schedule II narcotics and various drug paraphernalia in Livingston's residence and in a home where Livingston was

---

[2] The SCTC "process[es] drug cases through the expeditious entry of eligible defendants into judicially monitored drug treatment." *See* Syracuse City Court-Syracuse Community Treatment Court, Information Page, *available at* http://ww2.nycourts.gov/courts/5jd/onondaga/city/drug.shtml.

found (the "October 22, 2014 arrest").[3]  On November 25, 2014, Livingston was sentenced as a second felony offender to six years' imprisonment with three years of post-release supervision.

Livingston then filed in the SCTC a *pro se* motion to set aside his sentence pursuant to New York Criminal Procedure Law ("CPL") § 440.20.  According to Livingston, he was entitled to that relief because: 1) the plea court and the SCTC failed to advise him of the conduct that could result in the imposition of an enhanced sentence; 2) his right to due process was violated when the sentencing court imposed an enhanced sentence based on his June 3, 2014, arrest because those charges were dismissed; 3) his right to due process was violated when the sentencing court imposed an enhanced sentenced based on his October 22, 2014, felony charges for which he was never indicted; and 4) his right to due process was violated when the sentencing court summarily imposed an enhanced sentence without inquiring about the arrests that triggered the enhancement; and 5) the prosecutor made false and inflammatory remarks at the sentencing proceeding as to the new felony charges.  The SCTC denied Livingston's motion in a reasoned, unpublished opinion issued on September 22, 2015.  Livingston moved for permission to file a belated leave application in the Appellate Division, which was denied without comment on February 24, 2016.

Through counsel, Livingston then directly appealed his conviction, arguing that the appeal waiver contained in his SCTC contract was unenforceable and that his sentence was harsh and excessive.  Livingston requested that the Appellate Division of the New York Supreme Court reduce his sentence to time served or issue an order admitting him into the Comprehensive

---

[3]  Although Livingston was charged with various offenses relating to the October 22, 2014, events, Respondent states that the People never presented those charges to the grand jury.  Docket No. 20 at 9.

Alcohol and Substance Abuse Treatment ("CASAT") program. Livingston also filed a supplemental *pro se* brief alleging that: 1) his arrest on June 3, 2014, was malicious, unlawful, and without basis; 2) his arrest on October 22, 2014, was the only aggravating factor in determining his sentence; 3) the prosecutor's statements at sentencing were inflammatory and unduly prejudicial; and 4) the sentence imposed was based on the prosecutor's unsupported assertions. The Appellate Division unanimously affirmed the judgment against Livingston in a reasoned opinion issued on March 16, 2018. *People v. Livingston*, 70 N.Y.S.3d 140, 141 (N.Y. App. Div. 2018). Although the Appellate Division agreed that he did not validly waive his right to appeal, it nonetheless concluded that his sentence was not unduly harsh or severe and summarily rejected the arguments in Livingston's *pro se* supplemental brief. *Id.* Livingston filed both a counseled and *pro se* application for leave to appeal in the Court of Appeals, which were denied without comment on May 30, 2018.

Livingston then filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on July 16, 2018. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Livingston argues that: 1) his right to due process was violated when the sentencing court imposed an enhanced sentence based on his June 3, 2014, arrest because the charges were dismissed; 2) his right to due process was violated when the sentencing court imposed an enhanced sentenced based on his October 22, 2014, felony charges for which he was never indicted; 3) the prosecutor's statements at sentencing were inflammatory and unduly prejudicial, and his right to due process was violated when the sentencing court imposed an enhanced sentenced based on the prosecutor's unsupported

assertions; and 4) his right to due process was violated when the SCTC failed to give him an opportunity to show that the June and October 2014 arrests that triggered his termination were baseless.[4]

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

---

[4] In his Petition, Livingston also requests bail pending review of his habeas petition. He provides no reason, however, to reconsider the reasoned decision of this Court, through a previously-assigned district judge, denying this request. *See* Docket No. 36. In any event, because Livingston has been released to parole supervision, his request is now moot. *See* Section III.A., *infra*.

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would

give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

As aforementioned, a review of the DOCCS's inmate locator website indicates that, although Livingston was incarcerated at the time he filed his Petition, he was subsequently released on conditional parole. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)). Moreover, a petitioner serving a term of supervised release is considered "in custody" for purposes of 28 U.S.C. § 2254. *Harvey v. People of the City of New York*, 435 F. Supp. 2d 175, 177 (E.D.N.Y. 2006) (citing *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)). Accordingly, because Livingston is still in the custody of the New York DOCCS[5] and, in

---

[5] A prisoner conditionally released on parole supervision remains in the legal custody of the DOCCS until the expiration of his full maximum expiration date. *See* N.Y. Department of Corrections and Community Supervision Website, *Offender Information Data Definitions*, http://www.doccs.ny.gov/calendardatadefinitions.html (noting under "conditional release date" that "[i]f an inmate is conditionally released, he or she will be under parole

any event, still subject to collateral consequences of his conviction, his Petition has not been rendered moot by his release from prison, to the extent he challenges his underlying April 2013 conviction upon his guilty plea for third-degree criminal possession of a controlled substance.

Complicating matters here, however, is the fact that Livingston does not challenge directly the 2013 conviction. He does not contend that his guilty plea was unknowingly made, or that plea counsel rendered ineffective assistance. Rather, he challenges his 2014 termination from the SCTC program, which was based on two other arrests and various failed drug tests. But Livingston does not request in his prayer for relief that, as remedy of the alleged due process violations stemming from his termination from the program, that the Court issue an order requiring New York to reinstate him into the SCTC program. If he had, such claim could be considered moot because Livingston has already satisfied the sentence imposed and therefore the Court could not order such remedy. Instead, Livingston asks that he be re-sentenced to "the minimum term of 2 years or a full reversal," which would presumably have the effect of eliminating his remaining term of post-release supervision. Docket No. 1 at 19.

Assuming, without deciding, that Livingston's challenge to his 2014 termination from the SCTC program is not mooted by his release from imprisonment and is properly raised in this Court by way of § 2254,[6] Livingston is not entitled to relief on the merits of his claims either.

---

supervision of some level until his or her term expires (i.e., when the maximum expiration date is reached")).

[6] The records of this Court reflect that Livingston previously raised civil rights claims under 42 U.S.C. § 1983 relating to his October 22, 2014, arrest and its effect upon sentencing in the underlying conviction in this case. *See* Case No. 7:15-cv-0631 (TWD); *Livingston v. Henderson*, No. 7:15-cv-0631, 2019 WL 1427689 (N.D.N.Y. Mar. 29, 2019). The Court dismissed the suit for failure to state a claim and as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at *7 ("a § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief) . . . *if* success in that action would necessarily demonstrate

Although Livingston's Petition purports to raise four separate grounds for relief, they collapse into a single claim that the SCTC violated his due process rights by terminating him from the treatment program and imposing a six-year sentence without giving him an opportunity to show that the June and October 2014 arrests were baseless, and by relying on false information from the prosecution about those arrests in making its determination.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). "In evaluating due process claims, '[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution.'" *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (quoting *Narumanchi v. Board of Trs. of the Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)).

Because a petitioner has no constitutionally-protectable interest in remaining in a drug treatment program, *see Moore v. Peters*, 92 F. Supp. 3d 109, 123 (W.D.N.Y. 2015), it appears that the only protected liberty interest here is Livingston's right to due process at sentencing. "[T]here is no doubt that the Due Process Clause is implicated at sentencing, and that a defendant has a right to question procedures that lead up to the imposition of sentence." *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989) (citing *Gardner v. Florida*, 430 U.S. 349,

---

the invalidity of confinement or its duration" (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original)). The Court in that case opined that the instant Petition "is the proper avenue by which [Livingston] may seek relief from his conviction or sentence." *Id.* at *8 n.12.

358 (1977)).  However, all of the strict procedural safeguards and evidentiary limitations of a criminal trial are not required at sentencing.  *Williams v. New York*, 337 U.S. 241, 250 (1949).

Moreover, a sentencing court is afforded "wide discretion" when determining appropriate sentences.  *See*, *e.g.*, *Wasman v. United States*, 468 U.S. 559, 564 (1984); *Williams*, 337 U.S. at 246.  Any information or circumstance shedding light on the defendant's background, history and behavior is proper for the sentencing judge to consider when the judge makes his or her determination.  *Williams*, 377 U.S. at 249-50; *see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").  This is to "ensure[ ] that the punishment will suit not merely the offense, but the individual defendant."  *Pepper v. United States*, 562 U.S. 476, 488 (2011) (internal quotation marks omitted).  However, due process is violated when the information on which the defendant is sentenced is "materially untrue" or is, in fact, "misinformation."  *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) (concluding sentencing based on "materially untrue" assumptions concerning a prisoner's criminal record was inconsistent with due process of law).

In this case, however, Livingston fails to show that the sentencing court relied on materially untrue facts or misinformation.  As the county court explained in rejecting Livington's motion to set aside his sentence, it "made quite clear" at sentencing that it did not rely on the then-pending charges relating to his October 2014 arrest, and provided ample other reasons for supporting its sentencing determination aside from the events of June 2014:

The sentencing minutes from November 25, 2014 clearly indicates a litany of violations by the defendant pertaining to positive tests of defendant showing marijuana, cocaine and alcohol use, relapses, failure to attend meetings, failure to complete programs which precipitated the Court's "final, last chance warning" on July 17, 2014 being given to the defendant. Although this "final, last chance warning" is not provided for in the CPL, this Court allowed defendant to continue in the diversion program and released defendant from custody. Thereafter, defendant once again relapsed, failed to appear in Court and ultimately dropped out of his program.

The record thus demonstrates that the sentencing court did not violate Livingston's due process rights by relying on materially inaccurate or unreliable information when it terminated Livington from the SCTC program and imposed a six-year sentence. Furthermore, Livingston has not demonstrated, and this Court cannot conclude, that the New York Appellate Division's decision upholding the sentence is contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States. In sum, Livingston is not entitled to habeas relief on any of his due process claims.

V. CONCLUSION

Livingston is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 22, 2021.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge